UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOHN DELGADO : | |
| : | |
| Plaintiff, : | |
| : | CIVIL NO.   3:04CV1796(DJS) |
| v. : | |
| : | |
| UNITED STATES OF AMERICA : | |
| : | |
| Respondent. : | December 30, 2004 |

**RESPONDENT'S RESPONSE TO DEFENDANT
DELGADO'S MOTION PURSUANT TO 28 U.S.C. § 2255
TO VACATE, SET ASIDE, OR CORRECT SENTENCE**

On October 25, 2004, the Court issued an Order to Show Cause, directing the Government to file by November 30, 2004, a response to a Petition for Habeas Corpus, filed by the defendant, John Delgado. On November 30, 2004, the Court granted the Government's Motion to Extend Time, granting the Government until December 30, 2004 to file a response. The petitioner in his motion makes three claims:

1. That his sentence was improperly enhanced based upon an invalid state conviction;

2. That his sentence was imposed in excess of the statutory maximum as defined by <u>Blakely</u>; and

3. To the extent issues (1) and (2) could or should have been raised in direct appeal, movant's counsel was ineffective for an alleged failure to do so.

The petitioner, however, asks not that the Court rule on the merits of his motion, unsupported by a memorandum of law, but states that he has not obtained a decision as to the invalidity of prior state convictions, and asks that "this Court hold this motion in abeyance indefinitely pending a determination with respect to the invalidity of the state convictions at issue." The petitioner's motion is without merit and should be denied.

I.   PROCEDURAL HISTORY

On July 27, 2003, the petitioner, John Delgado, pleaded guilty to a one count Indictment charging him with being a felon in possession of a firearm, in violation of Title 18, United States Code, Section 922(g)(1). The plea agreement set forth that the defendant was subject to a maximum penalty of life imprisonment, and a mandatory minimum penalty of 15 years imprisonment, as a result of the defendant's three prior convictions for either crimes of violence of serious drug offenses, pursuant to Title 18, United States Code, Section 924(e), the Armed Career Criminal Act. On October 27, 2003, Delgado was sentenced to a term of imprisonment of 180 months and a term of supervised release of five years.

II.   ARGUMENT

  1.   No State Convictions That Formed the Basis of Defendant's Sentencing as Armed Career Criminal Have Been Invalidated

In Custis v. United States, 511 U.S. 485, 493-97 (1994), the Supreme Court held that with the exception of convictions obtained in violation of the right to counsel, a defendant in a federal sentencing proceeding has no right collaterally to attack the validity of prior state convictions used to enhance his sentence from a maximum of ten years to a mandatory minimum of 15 years in prison under the Armed Career Criminal Act of 1984, 18 U.S.C. §

924(e).  See also, United States v. Doe, 293 F.3d 473, 475 (2d Cir. 2001).  Rather, state court convictions that are the basis of a federal sentencing must be attacked in state court.  A defendant cannot leap frog state procedures to attack a state conviction initially by a federal section 2255 petition.  Daniels v. United States, 532 U.S. 374 (2001).  "Only after the state court proceedings are exhausted, as a general rule, can a prisoner come to federal court to pursue a habeas claim."  Brackett v. United States, 270 F.3d 60, 66 (1st Cir. 2001).

 Here, the defendant Delgado, acknowledges that he "has not yet obtained a decision as to the invalidity of the prior state convictions."  He merely makes a conclusory allegation that he was sentenced as an Armed Career Criminal based on Connecticut convictions that are constitutionally invalid.  He does not allege which state convictions are invalid, or any reasons why any prior conviction is invalid.  He does not set forth any efforts he has made to invalidate any prior state conviction. In the absence of any allegation that a state conviction has been vacated or set aside, the petitioner's motion must be denied.

 Acknowledging the absence of a state decision as to the invalidity of any prior conviction,  he argues that the issue "is not yet ripe" and requests that the Court hold the motion in abeyance indefinitely pending a determination with respect to the invalidity of any state convictions at issue, citing to Brakett (sic) v. United States.  However, the petitioner misstates the ruling by the First Circuit in the matter of Brackett v. United States, 270 F.3d 60 (1st Cir. 2001).  He states that the First Circuit "instructs" defendants to file a Section 2255 motion, even in the absence of a obtaining a ruling from state court invalidating a state conviction, prior to the expiration of the one-year limitation for filing motions under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"). The AEDPA  set forth a limitation of

one year from the date of final judgment of conviction in which to file a Section 2255 petition. However, the Bracket decision holds that the one-year period of time under Section 2255(4), "the date on which the facts supporting the claim or claims presented could have been discovered through an exercise of due diligence," is not the date of the actual vacating of the state conviction but rather the date the defendant first had knowledge of the facts that support vacating the state conviction. Brackett merely states that petitioners may argue for a rule of equitable tolling under Section 2255 when claimants file late petitions because of extraordinary circumstances. Brackett, 270 F.3d at 71. The decision notes that the First Circuit has yet to adopt such a rule. Id.

The Government's research has indicated that the Second Circuit has not ruled on this issue. But see United States v. Hoskie, 144 F. Supp. 2d 108 (2001) (one year statute of limitation to file Section 2255 petition starts to run the date the state convictions are vacated, not an earlier date when the defendant discovered the facts forming the basis for the attack on the state convictions). At any rate, at this time it is clear that the defendant has failed to establish a basis under Section 2255 to vacate set aside or correct his sentence of 180 months as an Armed Career Criminal, in that he acknowledges that he has not invalidated any state sentence upon which his status as an Armed Career Criminal has been effected. His motion, therefore, should be denied.

    2.    Blakely Is Not Grounds To Set Aside Defendant's Sentence As An Armed Career Criminal

The defendant in his second claim argues that his sentence as an Armed Career Criminal "was imposed in excess of the statutory maximum as defined by Blakely v.

Washington." He specifies that his claim is not that the facts of his prior convictions were required to be admitted by him or found by a jury, but rather that he was entitled to a finding beyond a reasonable doubt that his prior convictions qualified him as an Armed Career Criminal. His current motion is not supported by a memorandum of law and is limited to his conclusory claim that he is entitled to a finding that his prior convictions qualified him as an Armed Career Criminal beyond a reasonable doubt. He states that because he has requested that his motion be held in abeyance for the reasons set forth in his first claim, he reserves the right to file a memorandum of law in the future.

The defendant's claims here are limited solely to the question of his prior convictions and qualifications as an Armed Career Criminal. It is clear, however, that Blakely does not disturb the Supreme Court's earlier holding, in Almendarez-Torres v. United States, 523 U.S. 224, 247 (1998), that a defendant's prior convictions need not be treated as elements of his offense and may be determined by a sentencing judge by a preponderance of the evidence. In Blakely, the Supreme Court stated that it was continuing to apply the principle set forth in Apprendi that "other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 124 S. Ct. at 2536 (emphasis added).

The Second Circuit has broadly construed Apprendi's preservation of the prior-conviction exception. "[W]e read Apprendi as leaving to the judge, consistent with due process, the task of finding not only the mere fact of previous convictions but other related [factual] issues . . . [including] the "who, what, when, and where of a prior conviction." United States v. Santiago, 268 F.3d 151, 156 (2d Cir. 2001), cert. denied, 535 U.S. 1070

5

(2002). The Second Circuit, in Santiago, rejected a challenge under Apprendi and held that the existence of defendant's three predicate offenses as required for a sentence enhancement under the Armed Career Criminal Act were not elements of the aggravated offense such as were required to be charged in an indictment and found by jury, and "does not require different fact-finders and different burdens of proof for Section 924(e)'s various requirements." Id. at 157. As defendant was sentenced to a 15-year mandatory minimum under the Armed Career Criminal Act, 18 U.S.C. § 924(e), this ruling disposes of the defendant's claim.

Moreover, the Second Circuit has held that Blakely does not disturb binding circuit precedent that the U.S. Sentencing Guidelines are valid. The Second Circuit's recent decision in United States v. Mincey, 380 F.3d 102 (2d Cir. 2004) (per curiam), is directly on point. In Mincey, the Court decided that it would not apply Blakely to the federal sentencing guidelines, so that enhancements and departures provided for under the guidelines need not be proven to a jury beyond a reasonable doubt. Specifically, the Court stated:

> We therefore reject appellants' arguments that, in this Circuit, the Sixth Amendment now requires every enhancement factor that increases a Guidelines range to be pleaded and proved to a jury beyond a reasonable doubt. Unless and until the Supreme Court rules otherwise, the law in this Circuit remains as stated in Garcia, Thomas, and our other related case law. We conclude that the district court did not err in sentencing defendants in accordance with the Guidelines as previously interpreted by this Court.
>
> In so holding, we expect that, until the Supreme Court rules otherwise, the courts of this Circuit will continue fully to apply the Guidelines.

The Supreme Court will address the issue squarely when it considers the appeals in United States v. Booker, 04-104, and United States v. Fanfan, 04-105 during the October

2004 term. While it is possible that the Supreme Court might disagree with the Second Circuit's holding, there would not be any reason to await disposition of the present motion until after a decision in Booker and Fanfan because the defendant would not be entitled to collateral relief even if the Supreme Court were to find Blakely applicable to the federal sentencing guidelines.

Even if Blakely were to apply to the Guidelines, it would be a new procedural rule that does not apply retroactively under Teague v. Lane, 489 U.S. 288 (1989). The principle adopted in Blakely constitutes a "new constitutional rule of criminal procedure," which, under Teague, is not retroactively applicable to cases (like the defendant's) that became final before the decision was announced. The Supreme Court's decision in Schriro v. Summerlin, 124 S. Ct. 2519 (2004), supports the argument that Blakely is a new procedural rule that is not retroactive to cases on collateral review. In Summerlin, the Court considered whether Ring v. Arizona, 536 U.S. 584 (2002), applies retroactively to cases that had already become final when Ring was decided. Ring held that because Arizona law authorized the death penalty only if an aggravating factor was present, Apprendi required the existence of such a factor to be proved to a jury rather than to a judge. Summerlin's conviction and death sentence, which was imposed under the same Arizona law that was at issue in Ring, became final long before Ring was decided.

The Supreme Court held that "Ring announced a new procedural rule that does not apply retroactively to cases already final on direct review." 124 S. Ct. at 2526. The Court explained that a "new rule" resulting from one of its decisions applies to convictions that are already final only in limited circumstances. New substantive rules generally apply

7

retroactively, but new procedural rules generally do not – only "watershed rules of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding" are given retroactive effect.  Id. at 2523 (internal quotation marks omitted).  The Court concluded that Ring's holding is properly classified as procedural, rather than substantive, because it did not alter the range of conduct or the class of persons subject to the death penalty in Arizona; instead, it merely changed the method of determining whether the defendant engaged in that conduct.  Id. at 2523-24.  The Court also held that Ring did not fall within Teague's narrow exception for "watershed rules" of criminal procedure.  To qualify as a watershed rule, the Court explained, a new procedural rule must be one "without which the likelihood of an accurate conviction is seriously diminished."  Id. at 2523 (quoting Teague, 489 U.S. at 313) (emphasis added in Summerlin).  The Court held that Ring did not announce a watershed rule of criminal procedure because it could not confidently say that judicial fact finding seriously diminishes the accuracy of capital sentencing proceedings.  Id. at 2424-25.

Consistent with the reasoning of Summerlin, the Second Circuit had joined every other Court of Appeals to have considered the issue in holding that because Apprendi is a procedural rule that does not fall within the "watershed" exception, it is not retroactively applicable to cases on collateral review.  See Coleman v. United States, 329 F.3d 77 (2d Cir.), cert. denied, 124 S. Ct. 840 (2003).[1]  Importantly, the Second Circuit in Coleman held that Apprendi was

---

[1] Accord Sepulveda v. United States, 330 F.3d 55 (1st Cir. 2003); United States v. Swinton, 333 F.3d 481 (3d Cir.), cert. denied, 124 S. Ct. 458 (2003); United States v. Sanders, 247 F.3d 139 (4th Cir.), cert. denied, 534 U.S. 1032 (2001); United States v. Brown, 305 F.3d 304 (5th Cir. 2002), cert. denied, 538 U.S. 1007 (2003); Goode v. United States, 305 F.3d 378 (6th Cir.), cert. denied, 537 U.S. 1096 (2002); Curtis v. United States, 294 F.3d 841 (7th Cir.), cert. denied, 537 U.S. 976 (2002); United States v. Moss, 252 F.3d 993 (8th Cir. 2001), cert. denied, 534 U.S. 1097 (2002);

not a watershed rule not only despite the difference between using the jury and the judge as fact finder, but also despite the difference in the two burdens of proof (preponderance-of-the-evidence v. beyond-a-reasonable-doubt). In Coleman, the Court pointed out that in order to constitute a "watershed" rule of criminal procedure, "a rule must not only improve the accuracy of criminal proceedings, but also alter our understanding of the bedrock procedural elements essential to the fairness of those proceedings. In short, it must be a groundbreaking occurrence." 329 F.3d at 88 (internal quotation marks, alterations, and citations omitted). "Apprendi did not cut a new rule from whole cloth. It merely clarified and extended the scope of two well-settled principles of criminal procedure: the defendant's right to a jury trial and the government's burden of proof beyond a reasonable doubt." Id. at 89 (internal quotation marks omitted). This conclusion was supported by the consistent holdings of the Supreme Court and the Second Circuit that Apprendi errors may be reviewed for harmlessness, and not structural error -- a conclusion that would have stood in tremendous tension with a determination that Apprendi announced a watershed rule, see id. at 89-90 -- that is, one of the "small core of rules requiring the observance of those procedures that . . . are implicit in the concept of ordered liberty," id. at 88 (quoting United States v. Mandanici, 205 F.3d 519, 528 (2d Cir. 2000) (quoting, in turn, Graham v. Collins, 506 U.S. 461, 478 (1993))).

Blakely, like Apprendi, entailed an extension of the procedural rule that certain facts that go to punishment must be proven beyond a reasonable doubt to a jury. The Supreme

---

United States v. Sanchez-Cervantes, 282 F.3d 664 (9th Cir.), cert. denied, 537 U.S. 939 (2002); United States v. Mora, 293 F.3d 1213 (10th Cir.), cert. denied, 537 U.S. 961 (2002); McCoy v. United States, 266 F.3d 1245 (11th Cir. 2001), cert. denied, 536 U.S. 906 (2002).

9

Court has defined a "new rule" under <u>Teague</u> as one that was not "'dictated by precedent existing at the time the defendant's conviction became final.'" <u>Graham v. Collins</u>, 506 U.S. 461, 467 (1993) (quoting <u>Teague</u>, 489 U.S. at 301 (emphasis in <u>Teague</u>)); see <u>Sawyer v. Smith</u>, 497 U.S. 227, 234 (1990). Subsequent decisions have made clear that a rule may be "new" despite the fact that earlier cases supported it, <u>Sawyer</u>, 497 U.S. at 236, "or even control or govern" it, <u>Saffle v. Parks</u>, 494 U.S. 484, 491 (1990).

Under that definition, <u>Blakely</u> announced a new rule for <u>Teague</u> purposes. Every court of appeals with criminal jurisdiction held in the wake of <u>Apprendi</u> that the Sixth Amendment does not require facts that increase a defendant's Guidelines offense level to be found by the jury, and that judicial fact-finding in the application of the Guidelines is therefore constitutional.[2] See <u>Simpson v. United States</u>, 376 F.3d 679, 681 (7th Cir. 2004) ("The rule announced in <u>Blakely</u> is based in the Constitution and was not dictated or compelled by <u>Apprendi</u> or its progeny."); cf. <u>In re Dean</u>, 375 F.3d 1287 (11th Cir. 2004) (holding that Supreme Court had not made <u>Blakely</u> retroactive to cases already final on direct review, for

---

[2]<u>See</u>, <u>e.g.</u>, <u>United States v. Pettigrew</u>, 346 F.3d 1139, 1147 n.18 (D.C. Cir. 2003); <u>United States v. Casas</u>, 356 F.3d 104, 128 (1st Cir.), <u>cert. denied</u>, 124 S. Ct. 2405 (2004); <u>United States v. Luciano</u>, 311 F.3d 146, 153 (2d Cir. 2002), <u>cert. denied</u>, 124 S. Ct. 1185 (2004); <u>United States v. Parmelee</u>, 319 F.3d 583, 592 (3d Cir. 2003); <u>United States v. Cannady</u>, 283 F.3d 641, 649 & n.7 (4th Cir.), <u>cert. denied</u>, 537 U.S. 936 (2002); <u>United States v. Floyd</u>, 343 F.3d 363, 372 (5th Cir. 2003), <u>cert. denied</u>, 124 S. Ct. 2190 (2004); <u>United States v. Tarwater</u>, 308 F.3d 494, 517 (6th Cir. 2002); <u>United States v. Merritt</u>, 361 F.3d 1005, 1015 (7th Cir. 2004), <u>petition for cert. pending</u>, No. 03-10979 (filed June 18, 2004); <u>United States v. Banks</u>, 340 F.3d 683, 684-685 (8th Cir. 2003); <u>United States v. Ochoa</u>, 311 F.3d 1133, 1134-1136 (9th Cir. 2002); <u>United States v. Mendez-Zamora</u>, 296 F.3d 1013, 1020 (10th Cir.), <u>cert. denied</u>, 537 U.S. 1063 (2002); <u>United States v. Ortiz</u>, 318 F.3d 1030, 1039 (11th Cir. 2003).

purposes of filing second or successive § 2255 petition).[3]

The petitioner's sentence, therefore, should not be set aside as it was proper, under the clear Second Circuit precedent of Santiago, 268 F.3d 151, 156, for the Court to make findings by a preponderance of the evidence in regard to his prior convictions and thereby sentence him as an Armed Career Criminal under 18 U.S.C. § 924(e). Moreover, Blakely has not invalidated the U.S. Sentencing Guidelines, and even if eventually the Supreme Court decides it does, that rule will not be applied retroactively. The petitioner's second claim should be denied.

  3.  The Petitioner's Claims Of Ineffective Assistance Of Counsel Are Without Merit

When evaluating claims that a convicted criminal was deprived effective assistance of counsel, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. A defendant's *post hoc* accusations alone are not sufficient to overcome this strong presumption, as such a holding would lead to constant litigation by dissatisfied criminal defendants and harm the effectiveness, and potentially even the availability, of defense counsel. See Id.; See also

---

[3] The few district courts to have considered the issue agree that even if Blakely applies to the federal Sentencing Guidelines, it is not retroactive on collateral review. See Orchard v. United States, 2004 WL 1946319, *2 to *3 (D. Me. Sept. 2, 2004); Morris v. United States, 2004 WL 1944014 (C.D. Ill. Sept. 1, 2004); Garcia v. United States, No. 04-CV-0465, 2004 WL 1752588 at *6 (N.D.N.Y. Aug. 4, 2004); United States v. Stoltz, 325 F. Supp.2d 982, 987 (D. Minn. 2004); Rosario-Dominguez v. United States, No. 03 Civ. 4675 JSR GWG, 99CR.73 AGS, 2004 WL 1814021, at *9 n. 3 (S.D.N.Y. Aug. 16, 2004) (magistrate's report and recommendation); United States v. Beatty, No. 04-6648, 2004 WL 1759028 at *1 (4th Cir. Aug. 5, 2004) (unpublished).

Korenfeld v. United States, 451 F.2d 770, 775 (2d Cir. 1971), cert. denied, 406 U.S. 975 (1972) (holding that unsupported allegations by habeas petitioners are insufficient to support collateral relief). In light of the presumption in favor of counsel, the threshold for an ineffectiveness claim is extremely high, courts have "declined to deem counsel ineffective notwithstanding a course of action (or inaction) that seems risky, unorthodox, or downright ill-advised." Tippens v. Walker, 77 F.3d 682, 686 (2d Cir. 1996).

To prove a violation of his Sixth Amendment right to counsel based on his counsel's alleged ineffectiveness, the petitioner "must meet a difficult two-part test." DeLuca v. Lord, 77 F.3d 578, 584 (2d Cir.), cert. denied, 519 U.S. 824 (1996). He must establish both "(1) that counsel's performance fell below an objective standard of reasonableness, … and (2) that there is a reasonable probability that, but for the deficiency, the outcome of the proceeding would have been different." McKee v. United States, 167 F.3d 103, 106 (2d Cir. 1999) (quoting Strickland, 466 U.S. at 688, 694). The ultimate goal of the inquiry is not to second-guess decisions made by defense counsel; it is to ensure that the judicial proceeding is still worthy of confidence despite any potential imperfections, as "the right to the effective assistance of counsel is recognized not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial." Roe v. Flores-Ortega, 528 U.S. 470, 482 (2000) (quoting United States v. Cronic, 466 U.S. 648, 658 (1984)).

In assessing the reasonableness of counsel's performance "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689. Showing merely that there were potential strategic errors or that

12

some decisions were questionable is not sufficient as "[t]here are countless ways to provide effective assistance in any given case." Id.  In order to prevail on the first prong of the Strickland test, therefore, the petitioner must conclusively show that, despite the strong presumption in favor of counsel, "under the totality of the circumstances, [Attorney Weinberger] failed to exercise the skills and diligence that a reasonably competent attorney would provide under similar circumstances." Boria v. Keane, 99 F.3d 492, 496 (2d Cir. 1996), cert. denied, 521 U.S. 1118 (1997). As a general rule, "the fact that counsel is prepared and familiar with the relevant facts and legal principles is usually sufficient to defeat a claim that trial counsel was ineffective." Farrington v. Senkowski, 19 F. Supp.2d 176, 179 (S.D.N.Y. 1998), aff'd, 214 F.3d 237 (2d Cir. 2000).

     Even if the petitioner is able to make the difficult showing that his counsel's performance was objectively unreasonable and unprofessional, he still bears the burden of proving that the deficient performance "caused him substantial prejudice." To demonstrate prejudice the petitioner must show "a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." Hurel Guerrero v. United States, 186 F.3d 275, 282 (2d Cir. 1999) (quoting Strickland, 466 U.S. 687-88).  More than just simple speculation about potential harms caused by counsel's actions is necessary to support a finding of prejudice. For prejudice to exist, the established and unprofessional errors of counsel must have been "sufficient to undermine confidence in the outcome." Jackson v. Leonardo, 162 F.3d 81, 85 n.9 (2d Cir. 1998) (quoting Strickland, 466 U.S. at 694).

     Here, the petitioner's claim of ineffective assistance of counsel, is limited to the other

issues raised in his motions, namely, the failure to raise the invalidity of a prior state conviction upon which his Armed Career Criminal status is based and his claim that his sentence was improper on account of the Supreme Court case of <u>Blakely v. Washington</u>.  As is discussed above, both claims have no merit.  None of the petitioner's prior state convictions have been invalidated, nor has the petitioner stated any basis as to why any of his prior state convictions should be invalidated.  Further, as is set forth above, the Supreme Court case of <u>Blakely v. Washington</u> is inapplicable to the petitioner's sentence.  Accordingly, the Court should find that the petitioner has not met his burden and that his claims of ineffective assistance of counsel must therefore fail.

III.    <u>CONCLUSION</u>

For all of the above reasons, the defendant's motion to vacate, set aside, or correct sentence is meritless and should be dismissed.

Respectfully submitted,

KEVIN J. O'CONNOR
UNITED STATES ATTORNEY

THOMAS V. DAILY
ASSISTANT STATES ATTORNEY
450 MAIN STREET, RM. 328
HARTFORD, CT  06103
(203) 947-1101
FEDERAL BAR NO. ct03467

## **CERTIFICATION OF SERVICE**

I hereby certify that a copy of the within and foregoing was mailed, this 30th day of December, 2004, to the following:

John Delgado
Prisoner No. 15155-014
FCI - Otisville
P. O. Box 1000
Otisville, NY 10963

                                              THOMAS V. DAILY
                                              ASSISTANT UNITED STATES ATTORNEY